**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHARLES HALL, III, | : | |
| Petitioner, | : | Civil Action No. 15-7312 (MAS) |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**SHIPP, District Judge:**

*Pro se* Petitioner Charles Hall, III, confined at a Federal Correctional Institution in Fort Dix, New Jersey, files the instant Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"), challenging the sentence imposed by this Court on October 1, 2014 for a conspiracy to commit extortion offense. *United States v. Hall*, No. 13-cr-144 (D.N.J. filed Feb. 27, 2013) ("Crim. Dkt.").[1] At this time, the Court must screen the Motion for summary dismissal pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts. For reasons stated below, the Court dismisses the Motion.

## I.   FACTUAL BACKGROUND

On December 26, 2013, Petitioner pled guilty to one count of conspiracy to commit extortion under color of official right ("Count I"), and one count of conspiracy to distribute and

---

[1]   Although the Motion purports to challenge the judgments in two related cases, Case Nos. 13-cr-144 and 14-cr-001, (*see* Pet. 1, ECF No. 1), both of Petitioner's asserted grounds for relief in the Motion relate only to Petitioner's sentence for the conspiracy to commit extortion offense, (*see id.* at 4-5), which was charged in Case No. 13-cr-144. As such, the Court construes the Motion as raising claims relating solely to Case No. 13-cr-144.

possess with intent to distribute Oxycodone ("Count II"). (Plea Hr'g Tr. 15:13-19, Dec. 26, 2015, Crim. Dkt. No. 7.) The parties agreed, in the plea agreement, that the offense level for Count I would be 28, and would be 29 for Count II. (Plea Agreement 8-9, Crim. Dkt. No. 5.) Specifically, the parties agreed that the offense level for Count I derived from a factual stipulation that the payment obtained in the conspiracy to commit extortion was more than $70,000, but less than $120,000. (*Id.* at 8.) However, the parties stipulated that the agreement was not binding on the sentencing judge, and that the sentence to be imposed on Petitioner was within the sole discretion of the sentencing judge. (*Id.* at 2-3.) Petitioner confirmed this understanding at the plea hearing. (Plea Hr'g Tr. 13:12-23.) The agreement also contained a standard waiver clause, whereby Petitioner

> voluntarily waive[d], the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 28.

(Plea Agreement 11.) Again, Petitioner confirmed his understanding of this waiver at the plea hearing. (Plea Hr'g Tr. 13:24-15:9.)

At the sentencing hearing, the Court rejected the factual stipulation concerning the amount of payment, and found that Petitioner was guilty of obtaining payment in excess of $120,000, which increased the offense level of Count I from 28 to 30. (Sentencing Tr. 9:4-14, Oct. 23, 2014, Crim. Dkt. No. 13.) The Court accepted the offense level of 29 for Count II. (*Id.* at 9:15-20.) The Court then applied a multiple-count adjustment for both Count I and Count II, resulting in a combined offense level of 32. (*Id.* at 9:24-10:3.) The Court then lowered the offense level to 24, based on Petitioner's acceptance of responsibility, his assistance to the government in other

2

criminal matters, and a variance for "drug minus two,"[2] in light of Count II being a drug offense. (*Id.* at 10:4-15:3.) Offense level 24 carried with it an advisory sentence of 51 to 63 months. (*Id.* at 10:2-3.) After addressing the § 3553(a) factors, the Court imposed below-guidelines sentences of 48 months imprisonment and three years of supervised release, for Count I and Count II, to be served concurrently. (*Id.* at 24:17-25:2.)

## II.   STANDARD OF REVIEW

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). Additionally, "[i]t is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603

---

[2]   "Drug minus two" refers to an amendment to the United States Sentencing Guidelines where the base offense levels associated with various drug quantities for drug offenses were lowered by two levels. (*See* Sentencing Agreement 3, Crim. Dkt. No. 11.) At the time Petitioner was sentenced, the amendment had yet to go into effect, but the parties had agreed to stipulate to such a reduction for Petitioner in advance of the amendment. *Id.*

F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

### III.   DISCUSSION

In the Motion, Petitioner asserts two grounds for relief. In Ground I, Petitioner contends that the Court erred in holding that the payment amount for Count I was in excess of $120,000, because the Court failed to make an individualized determination of the loss amount that was attributable to Petitioner, in violation of *United States v. Collado*, 975 F.2d 985 (3d Cir. 1992). (Pet. 4.) In Ground II, Petitioner alleges that trial counsel provided ineffective assistance because he failed to object, at the sentencing hearing, to the Court's finding of a loss amount greater than what was stipulated to in the plea agreement. (*Id.* at 5.) However, the Court need not address the merits of these assertions in light of the concurrent sentence doctrine.

"Under the concurrent sentence doctrine, a court has 'discretion to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent.'" *Parkin v. United States*, 565 F. App'x 149, 152 (3d Cir. 2014) (quoting *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997)). "Since 'the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and preserves judicial resources for more pressing needs.'" *Id.* (quoting *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986)). Although courts should be mindful not to apply the concurrent sentence doctrine when the aggregate sentence could encompass a wrongful conviction, it "may be appropriately applied when the alleged error is associated only

4

with counts for which concurrent sentences are imposed and the other sentences are unassailable." *Id.* at 153 (quoting *Jones*, 805 F.2d at 1128).

Here, Petitioner was sentenced to 48 months imprisonment and three years of supervised release, for both Count I and Count II, with the two sentences to be served concurrently. As such, the concurrent sentence doctrine squarely applies here. Petitioner's claims in the Petition, even if successful, only affect the sentence of Count I—the amount of payment received under the extortion scheme is unrelated to the drug offense charged against Petitioner in Count II. None of the claims raised in the Petition, if successful, would invalidate or alter Petitioner's judgment of conviction or sentence for Count II. And since Petitioner received equal sentences for both Count I and Count II, no relief that the Court can grant, with respect to Count I only, would change Petitioner's total time of incarceration. *See Parkin*, 565 F. App'x at 153 (affirming the district court's application of the concurrent sentence doctrine because the petitioner was separately sentenced to a concurrent sentence of 90 months, which in no way would have been affected by the petitioner's challenge of his other 60-month concurrent sentence); *Lewis v. United States*, No. 13-1453, 2015 WL 3651721, at *8 (D.N.J. June 11, 2015) (finding that the concurrent sentence doctrine precludes the petitioner's challenge of a life sentence, when he was subject to another life sentence on a different count that would remain unchanged by his habeas challenge).

The Court makes note of *Kendrick v. Dist. Atty. of Cty. of Phila.*, 488 F.3d 217 (3d Cir. 2007), which held that the district court erred in applying the concurrent sentence doctrine, finding that "[t]he doctrine is not jurisdictional, and is discretionary," and should not be applied when "a wrongful criminal conviction has continued collateral consequences." *Id.* at 220.[3] However, that

---

[3]       *See also United States v. Bradley*, 644 F.3d 1213, 1293 (11th Cir. 2011) ("Only when the defendant would suffer adverse collateral consequences from the unreviewed conviction does the doctrine not apply.") (citation and quotation omitted); *United States v. Walker*, 677 F.2d 1014,

case is distinguishable here.  First, *Kendrick* dealt with a direct challenge to the validity of the defendant's conviction, which the *Kendrick* court actually vacated.  *Id.* at 219.  Here, Petitioner is not challenging the validity of his conviction under Count I, but merely the sentence he received.  Indeed, during the plea hearing Petitioner admitted to personal participation in the acts of, and conspiracy to commit, extortion under color of official right.  (*See* Plea Hr'g Tr. 16:6-22:21.); *see also United States v. Owens*, 427 F. App'x 168, 171 (3d Cir. 2011) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea.") (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  As such, all attendant collateral consequences that are attached to the conviction would remain intact even if the Court granted Petitioner's habeas claims and reduced his Count I sentence.  This is the same rationale that the Supreme Court has relied upon to reject the presumption of collateral consequences in a challenge against parole revocation, when the underlying conviction was not suspect.  *See Spencer v. Kemna*, 523 U.S. 1, 12 (1998) ("In the context of criminal conviction, the presumption of significant collateral consequences is likely to comport with reality. . . . The same cannot be said of parole revocation.").  As the Tenth Circuit has explained, "in cases where a defendant challenges only the *length of his sentence*, [and] the court has already upheld the conviction . . . [courts] may still exercise . . . discretion under the concurrent-sentence doctrine

---

1015 (4th Cir. 1982) ("[A] reviewing court need not pass upon the validity of defendant's conviction for additional counts once it has affirmed his conviction on one count, but only if there is no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse collateral consequences.") (citation and quotation omitted); *United States v. Vargas*, 615 F.2d 952, 959 (2d Cir. 1980) ("[T]he inquiry in any given case might ask what are the collateral consequences of affirming the conviction on the basis of the [concurrent sentence] doctrine, and whether they are of sufficient immediacy and impact to warrant its inapplicability.").

6

to decline to review the length of a concurrent sentence, because the defendant suffers neither prejudice nor collateral consequence as a result of the sentence." *United States v. Harris*, 695 F.3d 1125, 1139 (10th Cir. 2012) (emphasis in the original & internal citation omitted).

Furthermore, Petitioner does not point to, and this Court cannot envision, any collateral consequence which may result from the alleged invalid sentence under Count I, that Petitioner would not also suffer because of his conviction and sentence under Count II. Petitioner would still be classified as a convicted felon solely on the basis of his conviction under Count II, with all of the associated penalties and consequences that result. As such, the usual presumption of collateral consequences does not attach here, since Petitioner would suffer those same consequences via his conviction under Count II. Absent that presumption, "[courts] require[] collateral consequences of conviction to be specifically identified, and [accept] . . . only concrete disadvantages or disabilities that had in fact occurred, that were imminently threatened, or that were imposed as a matter of law." *Spencer*, 523 U.S. at 8. As stated above, that showing has not been made here. *Accord Ryan v. United States*, 688 F.3d 845, 849 (7th Cir. 2012) ("Ryan has not identified any collateral consequences of the mail-fraud convictions (such as deprivation of the right to vote or hold office) that would not equally be required by the RICO conviction.").

To the extent Petitioner may argue that his Count II conviction could be invalidated, set aside, or pardoned in the future, thus making the collateral consequences of his Count I conviction relevant again, as indicated in the Petition, Petitioner has already acknowledged that he must bring all of his habeas challenges to Count I *and* Count II in the instant Petition. (*See* Mot. 14, ECF No. 1.) As this is a habeas petition, it is likely the last real chance Petitioner has to meaningfully challenge his convictions. Nevertheless, Petitioner has not challenged his conviction and sentence under Count II. Thus, there is no substantial possibility of any additional consequences Petitioner

would suffer, now or in the future, if the Court does not reach the merits of Petitioner's habeas claims that address only Count I of his criminal convictions.   Accordingly, the Court finds it appropriate to invoke the concurrent sentence doctrine, and dismisses the Motion.

Even if the concurrent sentence doctrine does not apply here, Petitioner's habeas claims would be denied because, in his plea agreement, he waived his rights to appeal or otherwise collaterally attack his sentences.   "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution. . . . [Courts] will enforce appellate or collateral-attack waivers when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice."   *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015).   Here, Petitioner's signed plea agreement explicitly contained a waiver of appellate and collateral attack rights if his sentence fell "within or below the Guidelines range that result[ed] from the agreed total Guidelines offense level of 28." (Plea Agreement 11.)  As stated above, the Court entered a *below-guidelines* sentence for an offense level of 24, significantly lower than what was agreed to in the plea agreement.   As such, even if the Court did not apply the concurrent sentence doctrine, the Court would conclude that Petitioner is barred by the waiver provision of the plea agreement from raising his habeas claims.[4]

---

[4]   The Court further notes that although Petitioner raises an ineffective assistance of counsel claim in Ground II of the Petition, Petitioner does not dispute the validity of his plea agreement— that is, Petitioner does not allege that but for the ineffective assistance of counsel, he would not have entered into the plea agreement.   *See United States v. Jesus-Nunez*, 576 F. App'x 103, 106 (3d Cir. 2014) (holding that in order to assert an ineffective assistance of counsel claim challenging the validity of a plea agreement, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).   Petitioner's ineffective assistance claim only challenges trial counsel's failures to object to the Court's finding of loss in excess of the agreed-to-amount in the plea agreement, and for allowing him to agree to an inflated loss amount. (*See* Pet. 21-22.)   Petitioner does not allege that he would have rejected the plea agreement if he had been provided adequate counsel.   Therefore, the validity of the waiver provision is not in

8

## IV.    CERTIFICATE OF APPEALABILITY

Lastly, the Court denies a certificate of appealability ("COA").  The Antiterrorism and Effective Death Penalty Act of 1996 provides that an appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), the United States Supreme Court held that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

Here, the Court denies a certificate of appealability pursuant to 28 U.S.C. § 2253(c) because jurists of reason would not find it debatable that dismissal of the Petition is correct.

## V.    CONCLUSION

For the reasons set forth above, Petitioner's Motion is DISMISSED and the Court denies a certificate of appealability.

Michael A. Shipp, U.S.D.J.

Dated: 12/21/15

---

question.  Indeed, despite acknowledging the existence of the waiver, nowhere in the Petition does the Petitioner argue that it is unenforceable.  (*See id.* at 23-24.)